

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**KARON BICKHAM for S.B.**                     **CIVIL ACTION**

**VERSUS**                                     **NO: 05-1602-AJM-SS**

**JO ANNE B. BARNHART COMMISSIONER**
**OF SOCIAL SECURITY ADMINISTRATION**

## FINDINGS AND RECOMMENDATION

Plaintiff, ("SB")[1], by and through his next friend and mother, Karon Bickham ("Ms. Bickham"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1382(c) ("SSI").

## PROCEDURAL HISTORY

On April 3, 1997, Ms. Bickham submitted an application for SSI for SB, who was born in the first quarter of 1995. R. 21-22. On June 23, 1999, SB was awarded benefits for an impairment that functionally equaled Listing 112.02 (Organic Mental Disorders) with an onset date of March 12,

---

[1] Pursuant to a directive from the Judicial Conference and an order from the Chief Judge of this court, minors may only be referred to by their initials.



1997. R. 10. On May 31, 2002, the Commissioner notified Ms. Bickham that SB's case had to be reviewed every three years to determine his continuing entitlement to benefits. Ms. Bickham was to provide certain information and appear at a local office for the Commissioner. R. 114. Ms. Bickham sought to continue SB's benefits contending that SB had bad nerves and was afraid of a lot of things. R. 46-55. On October 18, 2002, the Commissioner determined that SB's disability ceased in October, 2002 and that SSI would stop on December 31, 2002. R. 115-18.

Ms. Bickham sought reconsideration. R. 119. A hearing was held on August 15, 2003 before a disability hearing officer. SB was present at the hearing with his mother and father. R. 136-142. A decision denying the request for reconsideration was issued on October 17, 2003. R. 134-35.

On October 20, 2003, Ms. Bickham requested a hearing before an Administrative Law Judge ("ALJ") contending that her child should continue to receive benefits because he was in special education and was a slow learner. R. 145. On November 19, 2003, counsel appeared for SB. R. 18. On August 25, 2004, a hearing was held before an ALJ. R. 167-185. On August 31, 2004, counsel for Ms. Bickham submitted additional materials from the Washington Parish School Board. R. 159. On October 26, 2004, the ALJ denied the request for continued benefits. R. R. 7-17. On November 9, 2004, Ms. Bickham requested review of the ALJ's decision. R. 6. On March 18, 2005, the Appeals Council denied the request for review. R. 3-5.

Ms. Bickham filed a complaint with this court on April 27, 2005. Rec. doc. 1. The Commissioner answered. Rec. doc. 7 A scheduling order was entered that required Ms. Bickham to file a motion for summary judgment by September 12, 2005. Rec. doc. 3. Because of Hurricane Katrina, the deadline was extended to December 2, 2005. Rec. doc. 9. Counsel for Ms. Bickham did not file a motion for summary judgment or seek additional time. More than thirty days have

passed since the extended deadline. Ms. Bickham is from Franklinton, Louisiana and her counsel is from Covington, Louisiana. Neither Ms. Bickham nor her attorney notified the court that they are unable to proceed with the case because of the lingering effects of Hurricanes Katrina or Rita. Under the circumstances, Ms. Bickham's request for relief from the final decision of the Commissioner will be taken under submission without the benefit of a briefing from her.

## STATEMENT OF ISSUES

The notice denying Ms. Bickham's request for reconsideration stated that SB had experienced medical improvement. R. 134. In response, Ms. Bickham requested a hearing with an ALJ and urged that benefits should be continued because SB was a slow learner and in special education. R. 145. Counsel for Ms. Bickham did not appear until after she made the request for a hearing before an ALJ. R. 18. Her counsel's opening statement at the hearing included:

> In our judgment the review process did not so much find improvement - - medical improvement, as held against the child apparent question of failure to cooperate in the 19 - - in the 2003 psychological evaluation with Dr. Culver, which is at Exhibit 4 (R. 25-29).

R. 171. Counsel contrasted Dr. Culver's evaluation with Dr. Murphy's evaluation that CB was an immature child who was reluctant to put forth his best effort, yet he was eager to please (R. 30-33). He contended that a September 10, 2003 response of SB's teachers to a questionnaire from the Commissioner (R. 89-96) reported that SB was "pretty much special education down the line. . . ." R. 171. As transcribed, counsel for Ms. Bickham concluded his opening statement with:

> They talk contention that the child has not demonstrated medical improvement that would show that he does not have the developmental delays contemplated at the time of the original allowance, consistent with listing 112.02.

R. 171. There is no other statement in the record by Ms. Bickham's counsel. His opening remarks

3

indicate that Ms. Bickham believed the Commissioner erred in finding there was improvement in SB's condition.[2] In the absence of any other filing by Ms. Bickham or counsel, the pleadings will be construed as raising the following issues on appeal:

Issue no. 1.   Did the ALJ err in finding medical improvement in SB's medical condition?

Issue no. 2.   Did the ALJ err in finding that SB's impairment, learning disability, did not result in "marked" functional limitations in at least two domains?

## ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The claimant was found to be "disabled" within the meaning of the Social Security Act, as amended, commencing March 12, 1997, and ending October 1, 2002.

2. The claimant has not engaged in substantial gainful activity during the relevant time period set forth.

3. The claimant's initial entitlement to Social Security Benefits was based on functionally equally listing 112.02. This impairment was present as of June 23, 1999, the date of the most favorable medical decision that the claimant was disabled.

4. The medical evidence established there has been medical improvement in the claimant's condition since June 23, 1997. The claimant no longer had an impairment or combination thereof which meets, medically equals or functionally equals the requisite degree of severity required under 112.02 of the Medical Listing of Impairments found in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant currently does have a Learning Disability, which is a "medically determinable severe impairment" within the meaning of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and Social Security Ruling (SSR) 96-3.

6. The claimant's allegations made in documents and in oral testimony were found to be essentially credible, but not dispositive of the issue of disability.

7. The limitations resulting from the effects of the claimant's impairments do not meet or medically equal the criteria of any of the listed impairments in Appendix 1,

---

[2] Ms. Bickham's complaint in this court merely complains of a decision which adversely affected her. Rec. doc. 1.

        Subpart P, Regulations No. 4 (20 CFR § 416.924(d)).

8. The limitations resulting from the effects of the claimant's impairments also do not functionally equal the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4.

9. The claimant does not have a combination of medically determinable physical or mental impairments that result in marked and extreme functional limitations.

10. The claimant's disability has ceased.

R. 16-17.

## ANALYSIS

a. <u>Standards of Review</u>.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Boyd v. Apfel</u>, 239 F.3d 698, 704 (5th Cir. 2001); <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); <u>Newton</u>, 209 F.3d at 452. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). This court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. <u>Id.</u>; <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See <u>Arkansas v. Oklahoma</u>, 503 U.S. 91, 113,

112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

The issue is whether the claimant is "disabled" under the definition found in 42 U.S.C. § 1382c(a)(3)(C) which states:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Id. The regulations thereunder mandate the following three step analysis:

> We follow a set order to determine whether you are disabled. [Step One] If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. [Step Two] If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. [Step Three] If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a). If a claimant's impairment does not meet or medically equal in severity a listed impairment, the Commissioner considers how the child functions in terms of six domains.[3]

---

[3] The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1).

There will be a finding of functional equivalence if there are marked limitations in two of the domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d).

    b.    <u>Testimony before the ALJ</u>.

SB stated he was nine years old at the time of the hearing before the ALJ.[4] R. 173. He was repeating the third grade in special education. R. 173 and 177. Some of the other children in his class were in regular education. R. 173. His teacher's name was Ms. Egan. He thought school was great. R. 174. He could add numbers, and liked to read, but only read at school. R. 178. During the summer he played outside with his friends. He liked to play football. He watched football games on TV. R. 174. He also rode his bike with his friends. He did not receive an allowance, but his mother did give him money. R. 175. He was able to buy something in a store and know whether he received the correct change. R. 175-76. He played video games. He went to movies and watched television. R. 176. He took the garbage out and helped his dad water the yard. R. 176-77. He had one sister and got along with her. He was able to dress himself and take a bath. R. 177.

Ms. Bickham testified that there were only special education children in the class with SB. He was required to repeat the third grade because he did not pass a test. R. 180. SB's behavior in school was acceptable. His biggest problem was that he was a slow learner. R. 183. Sometimes the other children picked on him. R. 180. He had some neighborhood friends. He was not able to count. She and her husband had to help SB with the chores. A lot of the time the garbage fell out of his hand. R. 181. He could brush his teeth and bathe. R. 181-82. She received SSI because her nerves were bad. R. 182. Her daughter had bad nerves, but she was just a little baby. R. 182-83. Mr. Bickham was on disability because he had a back injury and was a special education student as

---

[4] He was in fact seven.

7

a child. R. 183.

    c.    <u>Medical and School Records</u>.

On April 25, 2002, the Washington Parish school system completed an evaluation of SB. R. 58-69. It appeared that he did his best on the tests. R. 67-68. He demonstrated a significant deficit in math reasoning and met the criteria for specific learning disability. R. 69.

On September 25, 2002, Brian Murphy, Ph.D. in psychology, prepared a psychological evaluation at the Commissioner's request. R. 30-33. The results for SB on the WISC-III test were in the mild mental retardation level, but Dr. Murphy did not believe he put forward his best effort. Dr. Murphy noted that, for the lower ages, there were fewer items to test on and the results were less stable. R. 30. The diagnosis was developmental delay with mild mental retardation functioning. Dr. Murphy stated that if the scores did not increase over time and the adaptive behavior skills remained at the mental retardation level, then he would be more inclined to diagnose mental retardation. R. 31.

On September 10, 2003, SB's teachers completed a questionnaire at the request of the Commissioner. R. 89-96. They found no problems in his functioning in the following domains: (a) caring for himself; (b) moving about and manipulating objects; and (c) interacting and relating with others. R. 92-95. They reported that SB experienced problems on a daily basis in two domains: (a) attending and completing tasks; and (b) acquiring and using information. R. 91.

On September 11, 2003, Lester Culver, Ph.D. in psychology, issued a psychological report at the request of the Commissioner. R. 25-29. Dr. Culver reviewed Dr. Murphy's psychological evaluation. R. 25. SB was able to read the consent form. He required help with a few of the longest words. R. 25. The only reported cognitive limitation was that he was not allowed to cross the street

on his own. His responses concerning his daily activity were slow. R. 27. Dr. Culver discontinued the Wechsler test because SB did not put out a sufficient effort. R. 27. SB stated to Dr. Culver that he was there to get his "check." It was clear to Dr. Culver that SP was not putting out sufficient effort during the examination, but he was reluctant to infer malingering. SB's visual acuity improved when Dr. Culver threatened to discontinue testing. Dr. Culver did not believe he possessed enough reliable information to make a diagnosis. R. 28.

On May 26, 2004, the Washington Parish school system completed an evaluation in which it was determined that his reading and math skills were below level. R. 161-66. In academic and language arts, he had improved significantly. R. 165. It was reported that SB needed the direct instruction found in a small group setting available in a self-contained classroom. R. 162. On August 26, 2004, the principal of Franklinton elementary school reported that SB was assigned to a self-contained special education classroom for the 2004-05 school year. R. 160.

  d. <u>Analysis</u>.

<u>Issue no. 1.</u> Did the ALJ err in finding medical improvement in SB's medical condition?

  The ALJ found there was medical improvement such that SB was no longer disabled under the rationale for the prior disability determination. R. 11-12. If a claimant is eligible for disability benefits as a disabled child, the child's continued eligibility must be reviewed periodically. 20 C.F.R. § 416.994a(a). The Commissioner is required to determine whether there has been medical improvement in the child's condition. <u>Id</u>. at § 416.994a(b)(1).

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled. Although the decrease in severity may be of any quantity or degree, we will disregard minor changes in your signs, symptoms, and laboratory findings that obviously do not represent medical improvement and

> could not result in a finding that your disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairments(s).

Id. at § 416.994a(c). The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether the child was disabled or continued to be disabled. Id. at § 416.994a(c)(1).

The ALJ reported that SB was allowed benefits on June 23, 1999 with a disability onset date of March 12, 1997. R. 11. The determination was based on medical evidence revealing that SB had global developmental delays. The condition was considered functionally equal to the requirements in Listing 112.02 (20 C.F.R. part 404, subpart P, app. 1. section 112.02 Organic Mental Disorders). R. 11. At that time SB was found to have a marked deficit in three domains: (1) acquiring and using information; (2) moving about and manipulating objects; and (3) caring for himself. R. 11.

The ALJ reviewed the evidence developed after the Commissioner initiated the review to determine continued eligibility and found:

> SB still has cognitive delays which affect his ability to acquire and use information. However, he no longer has deficits in his personal functioning as he is able to engage in self care activities. . . . (T)here is no significant deficit in his motor functioning as he has the ability to manipulate objects without difficulty.

R. 11. Based on these findings, the ALJ concluded that medical improvement was demonstrated.

Medical improvement does not require a particular level of improvement. It may be of any quantity or degree, so long as any change is not minor. Id. at § 416.994a(c). In the prior determination, SB was found to have "marked" deficits in the three domains. A "marked" limitation is present:

> [W]hen your impairment(s) interferes seriously with your ability to independently

> initiate, sustain, or complete activities. . . . "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

Id. at § 416.962a(e)(2). The issue is whether there was medical improvement in the three domains.

In support of his finding of medical improvement, the ALJ cited: (1) an Individual Evaluation Plan for SB completed by the Washington Parish school system on April 24, 2002 (R. 58-69); (2) the IQ test results from the September 25, 2002 psychological examination by Dr. Murphy (R. 30-33); (3) SB's academic achievement scores (R. 70-75); and (4) the testimony of SB and Ms. Bickham regarding his activities (R. 173-82). The ALJ described what he found in this evidence. R. 11. For example, he commented that SB's average academic achievement scores indicated an improvement in his level of cognitive functioning since the prior determination that he was disabled. R. 11. At the end of the first grade his scores for reading, mathematics and social living were in the range of 78 to 85 percent. His writing scores were either unsatisfactory or needed improvement. R. 72. Each element cited by the ALJ in support of his finding of medical improvement is present in the record. There was substantial evidence in support of the finding that there was medical improvement in SB's level of cognitive functioning.

Although SB had a learning disability and was in special education, there was substantial evidence that SB did not possess a "marked" deficit in either the domain of moving about and manipulating objects or caring for himself. On August 30, 2003, SB's teachers did not identify problems in either of these domains. R. 93-94. SB and Ms. Bickham testified that he could brush his teeth, take a bath and dress himself. R. 177 and 181-82. SB testified that he liked to catch the football and he rode a bike. R. 174-75. SB did not possess a "deficit" in either of these domains at

the time of the hearing before the ALJ. There is substantial evidence that there was medical improvement in SB's conditions with respect to these two domains.

Issue No. 2.   Did the ALJ err in finding that SB's impairment, learning disability, did not result in "marked" functional limitations in at least two domains?

In order to determine whether SB's learning disability met or medically equaled in severity a listed impairment, the Commissioner considered how SB functioned in terms of the six domains. The discussion of issue no. 1 demonstrated that there was substantial evidence for the ALJ's finding that there were no limitations in two domains: (a) moving about and manipulating objects; and (b) caring for yourself. The question is whether there is substantial evidence to support the ALJ's finding no limitations in the remaining domains.

In finding that there were no limitations in the domain of interacting and relating with others, the ALJ relied on the testimony at the hearing that SB had friends and was able to play competitive sports. R. 14. The ALJ's determination that there were no limitations in the domain of health and physical well-being, was based on the absence of any indication of any physical health problems. None of the filings by Ms. Bickham report any physical health problems other than "nerves." SB's teachers reported that he did not exhibit any chronic or episodic conditions. R. 95. There was substantial evidence to support the finding of no limitation in the domains of interacting with others and health and physical well-being. R. 13-15.

The last domain is attending and completing tasks. In finding no limitations in this domain, the ALJ noted that SB was found to have normal attention and memory. R. 14. SB's teachers described him as having problems functioning in this domain. R. 91. His ability to carry out multi-step instructions was described as a very serious problem. His ability to organize his school

materials was rated a serious problem. Six other activities in this domain, for example carrying out single step instructions, were described as obvious problems. The teachers added that he needed be in small groups and required one-on-one instruction in order to be successful in the classroom. R. 91. The April 25, 2002 and May 26, 2004 school system evaluations reported that SB required repeated directions for LEAP testing. R. 59 and 163. The special education model for SB was designated mild/moderate as opposed to severe/profound. R. 61. Dr. Murphy did not specifically comment on SB's attention and memory. He did report that the intellectual testing was completed without complications or difficulty. R. 31. With respect to attention, Dr. Culver described SB as alert. He was able to repeat four digits forward and three backward. He was not distracted by extraneous noises in the hall and did not have difficulty keeping his hands off the test materials. R. 28. As to memory, Dr. Culver said SB repeated four nouns on the second trial and recalled none of four concrete nouns after five minutes. R. 28.

Although there is some evidence of problems in SB's ability to attend and complete tasks, there is also substantial evidence of a normal ability to complete the activities in this domain. To determine that SB possessed a marked limitation in the domain of attending and completing tasks would require the court to re-weigh the evidence, try the issue *de novo* or substitute its judgment for the Commissioner's. This is not permitted. <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the request of the plaintiff, SB, for relief from the decision of the Commissioner of Social Security denying his application for benefits is DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

13

recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 23rd day of January, 2006.

SALLY SHUSHAN
**United States Magistrate Judge**